## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Garry Headrick, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>                    v.<br><br>CC&T CONSULTING LLC<br><br>             and<br><br>DIAMONDBACK E&P LLC<br><br>    Defendants. | **Case No.**  CIV-20-454-D<br><br>Jury Trial Demanded<br><br>Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Garry Hedrick brings this lawsuit to recover unpaid overtime wages and other damages from CC&T Consulting, LLC and Diamondback E&P LLC (collectively Defendants) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      Headrick worked for the Defendants as a Drilling Consultant from approximately August 2018 through August 2019.

3.      Headrick and the other similarly situated workers who worked for the Defendants in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Defendants classified

Headrick and other similarly situated workers as independent contractors and paid these workers

a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither Headrick, nor any other similarly situated workers who worked for the

Defendants and received a day-rate, received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other

damages owed to these workers.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     CC&T Consulting, LLC conducts substantial business operations in this District.

11.     CC&T Consulting, LLC's headquarters is located in this District.

12.     Diamondback E&P, LLC, Inc. conducts substantial business operations in this

District.

## PARTIES

13.     Headrick worked for the Defendants (joint employers) as a Drilling Consultant

from approximately August 2018 until August 2019.

14.     Throughout his employment with the Defendants, Headrick was classified as an

independent contractor and paid a day-rate with no overtime compensation.

15.     Headrick's relationship with the Defendants was an employer/employee

relationship.

16.     Headrick's written consent is attached as Exhibit 1.

17.     Headrick brings this action on behalf of himself and all other similarly situated

workers who were classified as independent contractors and paid by the Defendants day-rate system.

18.     Although these workers regularly worked more than 40 hours each week, Defendants paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

19.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield workers, employed by, or working on behalf of, Defendants who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

20.     The Putative Class Members are easily ascertainable from the Defendants business and personnel records.

21.     CC&T Consulting is an Oklahoma limited liability company and may be served by serving its registered agent for service of process, Shane Green, **RT 3 BOX 233 Pauls Valley, OK 73075**, or wherever it may be found.

22.     Diamondback E&P, LLC is a Delaware corporation and may be served by serving its registered agent for service of process, **Corporation Service Company, 10300 Greenbriar, Oklahoma City, 73159**, or wherever it may be found.

## COVERAGE UNDER THE FLSA

23.     At all relevant times, the Defendants have been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

24.     At all relevant times, the Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

25.     At all relevant times, the Defendants have been an enterprise engaged in

commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). The Defendants have and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

26.     In each of the last three years, the Defendants have had annual gross volume of sales made or business done of at least $1,000,000.

27.     At all relevant times, Headrick and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

28.     Defendants treated Headrick and the Putative Class Members as employees and uniformly dictated the pay practices applied to Headrick and the Putative Class Members.

29.     Defendants' misclassification of Headrick and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

30.     Defendants' uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

31.     To provide services, Defendants hired oilfield personnel (like Headrick) to work on its behalf, including Drilling Consultants.

32.     Defendants classified many of these workers (including Headrick and the Putative Class Members) as independent contractors.

33.     But Defendants did not hire these workers on a project-by-project basis.

34.     Rather, Defendants hired and treated these workers just like regular, even if

sometimes short-term, employees.

35.     During the relevant period, these workers regularly worked for Defendants in excess of 40 hours a week for weeks at a time.

36.     During the relevant period, these workers worked for Defendants on a day-rate basis.

37.     During the relevant period, these workers were not paid overtime for the hours they worked for Defendants in excess of 40 hours each week.

38.     These workers make up the proposed Putative Class.

39.     While exact job titles and job duties may differ, Defendants subjected these workers to the same or similar illegal pay practices for similar work.

40.     For example, Headrick worked for Defendants as a Drilling Consultant from approximately August 2018 to August 2019 in Texas.

41.     Headrick reported directly to Defendants management-level employees.

42.     Throughout his employment with Defendants, Headrick regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Defendants paid Headrick a day-rate for each day worked, regardless of how many hours he worked in a day or week.

43.     Headrick regularly worked more than 12 hours each day, often for weeks at a time.

44.     Headrick was on call 24 hours a day.

45.     Headrick routinely worked 16 hours a day.

46.     Headrick would work 14 days continuously on many occasions.

47.     For example, form June 30, 2019 to July 7, 2019, Headrick worked over 84 hours that week and received overtime compensation for all hours over 40 hours.

48.     Defendants required Headrick to work so many hours and days that he lived in Texas.

49.     Headrick's relationship with Defendants was clearly one of an employer/employee.

50.     Headrick's work was governed entirely by Defendants.

51.     The Putative Class Members performed the same general job duties performed by Headrick.

52.     The Putative Class Members worked the same or similar schedule worked by Headrick, regularly working more than 60 hours each week. Headrick's work schedule is typical of the Putative Class Members.

53.     During the relevant period, Defendants classified Headrick and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

54.     Headrick and the Putative Class Members never received a salary.

55.     If Headrick and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

56.     Headrick and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

57.     Without the job performed by Headrick and the Putative Class Members, Defendants would not have been able to complete its business objectives.

58.     Headrick and the Putative Class Members were economically dependent on Defendants and relied on Defendants for work and compensation.

59.     Defendants determined the amount and type of compensation paid to Headrick and the Putative Class Members.

60.     Defendants set Headrick's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Defendants.

61.     Headrick and the Putative Class Members worked in accordance with the schedule set by Defendants.

62.     Defendants prohibited Headrick and the Putative Class Members from subcontracting out the work they are assigned by Defendants.

63.     Headrick and the Putative Class Members had to follow Defendants' policies and procedures.

64.     Headrick and the Putative Class Members' had to adhere to the quality standards put in place by Defendants.

65.     Headrick and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Defendants provided Headrick and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

66.     Headrick and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

67.     Defendants made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Headrick and the Putative Class Members work.

68.     Headrick and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

69.     Headrick and the Putative Class Members did not market their services while employed by Defendants.

70.     While employed by Defendants, Headrick and the Putative Class Members worked exclusively for Defendants.

71.     Defendants set Headrick's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Defendants.

72.     At all relevant times, Defendants maintained control, oversight, and direction of Headrick and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

73.     Defendants controlled Headrick's and the Putative Class Members' pay.

74.     Likewise, Defendants controlled Headrick's and the Putative Class Members' work.

75.     Headrick's and the Putative Class Members' work had to adhere to the quality standards put in place by Defendants.

76.     Headrick and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

77.     Defendants knew Headrick and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

78.     Defendants' records reflect the fact that Headrick and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

79.     Headrick and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Defendants and the Putative Class Members were paid on a day-rate basis.

80.     Defendants set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Defendants' policies and procedures.

81.     The work Headrick and the Putative Class Members performed was an essential part of Defendants' core businesses.

82.     Defendants controlled Headrick's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

83.     Defendants controlled all the significant or meaningful aspects of the job duties Headrick and the Putative Class Members performed by requiring them to strictly adhere to Defendants' directives, policies, and procedures.

84.     Defendants exercised control over the hours and locations Headrick and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

85.     Even though Headrick and the Putative Class Members may have worked away from Defendants' offices without the constant presence of Defendants supervisors, Defendants still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

86.     Indeed, the daily and weekly activities of Headrick and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendants.

87.     Virtually every job function was predetermined by Defendants, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

88.     Defendants prohibited Headrick and the Putative Class Members from varying their job duties outside of predetermined parameters and required Headrick and the Putative Class Members to follow Defendants' policies, procedures, and directives.

89.     Headrick and the Putative Class Members performed routine job duties largely dictated by Defendants.

90.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

91.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

92.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

93.     Defendants uniformly denied Headrick and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

94.     Headrick and the Putative Class Members were not employed on a salary basis.

95.     Headrick and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

96.     Defendants' day-rate policy violated the FLSA because it deprived Headrick and

the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

97.     Defendants knew Headrick and the Putative Class Members worked more than 40 hours in a week.

98.     Defendants knew, or showed reckless disregard for whether, Headrick and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

99.     Defendants knew, or showed reckless disregard for whether, Headrick and the Putative Class Members were not exempt from the FLSA's overtime provisions.

100.    Nonetheless, Headrick and the Putative Class Members were not paid overtime.

101.    Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

**JOINT EMPLOYER ALLEGATIONS**

102.    All previous paragraphs are incorporated as though fully set forth herein.

103.    Plaintiff and the FLSA Collective Action Class routinely and as part of their regular duties for Defendants were subjected to unified general management and policies, including policies regarding payroll, scheduling and employment of Plaintiff and the Putative Class Members.

104.    Defendants hired Plaintiff and the Putative Class Members to actually perform these oilfield services.

**COLLECTIVE ACTION ALLEGATIONS**

105.    Headrick brings this claim as a collective action under the FLSA.

106.    The Putative Class Members were victimized by Defendants' pattern, practice,

and/or policy which was in willful violation of the FLSA.

107.    Other Putative Class Members worked with Headrick and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

108.    Based on his experiences with Defendants, Headrick is aware that Defendants' illegal practices were imposed on the Putative Class Members.

109.    The Putative Class Members are similarly situated in all relevant respects.

110.    The Putative Class Members are blue-collar workers.

111.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

112.    The illegal day-rate policy that Defendants imposed on Headrick was likewise imposed on all Putative Class Members.

113.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

114.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

115.    The overtime owed to Headrick and the Putative Class Members will be calculated using the same records and using the same formula.

116.    Headrick's experiences are therefore typical of the experiences of the Putative Class Members.

117.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

118.    Headrick has no interests contrary to, or in conflict with, the Putative Class

Members that would prevent class or collective treatment.

119.     Like each Putative Class Member, Headrick has an interest in obtaining the unpaid overtime wages owed under federal law.

120.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

121.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA.

122.     Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

123.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

124.     The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

125.     Among the common questions of law and fact are:

    a.     Whether Defendants employed the Putative Class Members within the meaning of the FLSA;

    b.     Whether Defendants' decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

    c.     Whether Defendants' violation of the FLSA was willful; and

    d.     Whether Defendants' illegal pay practice applied to the Putative Class Members.

126.     Headrick and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

127.    Headrick knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

128.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

129.    Defendants is liable under the FLSA for failing to pay overtime to Headrick and the Putative Class Members.

130.    Consistent with Defendants' illegal day-rate policy, Headrick and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

131.    As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Headrick and the Putative Class Members.

132.    Defendants' illegal day-rate policy deprived Headrick and the Putative Class Members of the premium overtime wages they were owed under federal law.

133.    Defendants was aware, or should have been aware, that the FLSA required it to pay Headrick and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

134.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

135.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

136.    Those similarly situated employees are known to Defendants, are readily

identifiable, and can be located through Defendants' records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

137.    Headrick realleges and incorporates by reference all allegations in preceding paragraphs.

138.    Headrick brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

139.    Defendants violated, and is violating, the FLSA by failing to pay Headrick and the Putative Class Members overtime.

140.    Defendants misclassified Headrick and Putative Class Members for purposes of the FLSA overtime requirements.

141.    Headrick and the Putative Class Members were Defendants' employees for purposes of the FLSA overtime requirements.

142.    Defendants was Headrick's and the Putative Class Members' employer under the FLSA. Defendants suffered or permitted Headrick and the Putative Class Members to work for or on its behalf during the relevant period.

143.    Defendants cannot meet its burden to demonstrate Headrick and Putative Class Members are exempt from overtime under the administrative exemption.

144.    Defendants cannot meet its burden to demonstrate the Headrick and Putative Class Members are exempt from overtime under the executive exemption.

145.    Defendants cannot meet its burden to demonstrate Headrick and Putative Class Members are exempt from overtime under the professional exemption.

146.    Defendants cannot meet its burden to demonstrate Headrick and Putative Class Members are exempt from overtime under the highly compensated exemption.

147.    Defendants    misclassified    Headrick    and    the    Putative    Class    Members    as

independent contractors.

148.    Defendants failed to guarantee Headrick and the Putative Class Members a salary.

149.    Defendants failed to pay Headrick and the Putative Class Members overtime.

150.    Defendants paid Headrick and the Putative Class Members a day-rate.

151.    Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Headrick and the Putative Class Members overtime compensation.

152.    Defendants' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

153.    Accordingly, Headrick and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

154.    Plaintiff requests a jury trial.

## PRAYER

**WHEREFORE**, Headrick, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.    An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.    A judgment against Defendants awarding Headrick and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.      Issuance of a declaratory judgment that the practices complained of in this

Complaint are unlawful under the FLSA;

d.      An order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Gabriel A. Assaad*
McDonald Worley, PC
1770 St. James St., Suite 100
Houston, TX 77056
(713) 523-5500 – telephone
(713) 523-5501 – facsimile
gassaad@mcdonaldworley.com